# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENDALL SHANE LOWERS, #411944 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-12-1963 |
| SHERIFF ROB CORLEY, et al. | * | |
| Defendants | * | |

## **MEMORANDUM OPINION**

Plaintiff, Kendall Shane Lowers ("Lowers"), alleges that on April 19, 2012, his therapy session with a mental health counselor was improperly recorded by Garrett County Detention Center personnel. He seeks money damages and injunctive relief mandating changes to the facility to accommodate visitation. ECF No. 1. Defendants have filed a Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 8) which shall be construed as a Motion for Summary Judgment. Plaintiff, who transferred from the Detention Center to a Maryland Division of Correction prison, was granted additional time to file an opposition to Defendants' dispositive motion (ECF Nos. 17 and 18), but has failed to respond.[1] A hearing is not necessary to resolve the pending dispositive motion. See Local Rule 105.6 (D. Md. 2011).

## Background

The parties agree that on one occasion, Plaintiff's session with his therapist was recorded. According to Defendants, as a matter of departmental policy and practice, Detention Center inmates meet with attorneys, counselors, psychologists, psychiatrists or clergy in a private interview room. ECF No. 8, Ex. 1, Affidavit of Major Terry Schlossnagle. These meetings are

---

[1] Pursuant to the dictates of Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the self-represented Plaintiff was provided written notice that he is entitled to file an opposition response, with materials in support thereof, and that should he fail to respond, summary judgment could be entered against him without further notice. ECF No. 9.

not recorded. Id. If an interview room is not available, inmates are allowed to speak with an attorney, medical provider, counselor, or member of the clergy in one of the Detention Center's visiting rooms. Id. Inmates are separated from visitors in the visiting rooms by a window and can communicate with visitors only through use of a telephone system. Id. When a visitor room is used for meetings with an attorney, medical provider, counselor, or member of the clergy, departmental policy mandates that corrections staff turn off the recording system. Id.

The recording system is designed to record all telephonic communications involving inmates. Id. The visiting room system was installed in 2010. Id. The visiting room and holding-cell phones used by inmates are incorporated into the recording system and are the only phones as to which the recording mechanism can be turned off. Id. The recording system is controlled by a switch in the Control Room and requires the use of a personal identification number (PIN) so that staff can track inmate communications. Id. All Detention Center inmates are issued a PIN number. When an inmate picks up a visiting room telephone, the recording system (unless it has been deactivated) prompts the inmate to enter his/her PIN. Id. The telephone will not work unless the PIN is properly entered. Id. After the inmate enters his/her PIN, the telephone activates and, prior to any conversation, a prerecorded message informs both parties that the conversation is being monitored and recorded. Id.

If an inmate is about to speak with an attorney, medical provider, counselor, or member of the clergy and is prompted to enter a PIN, the recording system has not been deactivated. Id. In these circumstances, the inmate can alert correctional staff and a staff member will turn off the recording mechanism. Id. In other words, in these circumstances it is incumbent upon the inmate to alert staff to the oversight. If the recording system is turned off prior to initiation of the call, the inmate will not be prompted to enter his/her PIN and can immediately begin a

private conversation. Id. Recorded inmate conversations are stored on a secure server for approximately one year in accordance with Detention Center policy and conversations cannot be accessed through any of the Detention Center's network computers, but only from one designated computer terminal that is expressly limited to sworn members of the Department of Corrections. Id. No staff member is able to delete any recorded conversation from the server. Recorded conversations stored on the secured server can be searched in various ways, including searches by inmate name, PIN, or date of recording. From these search parameters, a recorded conversation can be uploaded and listened to. Id. In addition to storing the recording, the system tracks the location from where in the Detention Center the call originated, the number dialed, the start and end time of the conversation, the PIN number used, the type of call, and how the call terminated. Id.

Lowers, a pre-trial detainee at the Detention Center, was assigned PIN 011887. On April 19, 2012, he had a telephone conversation in one of the visiting rooms with his counselor. ECF No. 8, Exs. 2, 3, and 4).[2] Prior to conversing, the system prompted Lowers to enter his PIN. Id., Ex. 1. Although this should have alerted Lowers to the fact that the recording system was activated, Lowers did not alert staff that he had been prompted to enter his PIN in advance of a restricted call. Id., Exs. 1, 2 and 6. Before conversation begins, the system plays a pre-recorded message informing the participants that their conversation is being monitored and/or recorded. Id., Exs. 1 and 6. Despite this fact, Lowers and his counselor conversed. Id., Exs. 2 and 6. The conversation was recorded but not monitored. Id., Exs. 1 and 6. The recorded conversation is

---

[2] Exhibit 2 is the Garrett County Jail Grievance Form filed by Lowers on April 19, 2012. Exhibit 3 is the Garrett County Detention Center Interview Log. Exhibit 4 is the Secure Call Platform record. Defendants state that with the exception of Exhibit 1, all of the documents designated as an Exhibit by Defendants were made at or near the time of the act, event, or condition, or the rendition of diagnosis; each was made by a person with knowledge or from information transmitted by a person with knowledge; each was made and kept in the course of the regularly-conducted operations and activities of the Garrett County Detention Center, and it is the regular practice of the Garrett County Detention Center to make and keep each and every such record.

stored in the server and has never been accessed by any staff member at the Detention Center or by any other person.  Id., Ex. 1.

On April 20, 2012, Lowers filed a formal grievance form complaining that his conversation with his therapist the previous day had been recorded.  Id., Ex. 2.  In response, Sergeant Kevin Blum, at the direction of Defendant Tichnell, reminded all correctional officers that the telephone recording system had to be deactivated in advance of privileged telephone conversations.  Id., Ex. 5.  Lowers' grievance was investigated by Corrections Officer P. Lewis. Id., Ex. 6.  During his investigation, Officer Lewis reviewed the Detention Center Interview Log which indicated that Lowers had met with Les McDaniels, a local counselor, between 1:42 p.m. and 2:00 p.m. on April 19, 2012.  Lewis then reviewed Lowers' individual telephone record which indicated that Lowers had used the phone system in the visitors room on April 19 from 1:42 until 2:00 p.m., and that the conversation had been recorded.  Id.. Ex. 6.  Lewis acknowledged to Lowers that the conversation had been recorded, told him it had been inadvertent, and that it would not occur again.  Lewis reminded Lowers that, in regard to future privileged telephone conversations, any prompt requiring entry of a PIN indicated that the recording system was still activated and if this occurred, Lowers should ask a corrections officer to deactivate the recording mechanism.  Id., Ex. 6.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to. . .the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Under § 1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person. . .to the deprivation of any rights. . . ." 42 U.S.C. § 1983. The statute requires a showing of *personal* fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690 (1978); West v. Atkins, 815 F.2d 993, 996 (4th Cir.1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be

5

"affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. . .") (quoting Bennett v. Gravelle, 323 F.Supp. 203, 214 (D. Md. 1971), aff'd., 451 F.2d 1011 (4th Cir. 1971)). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. See Monell, 436 U.S. at 690; Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). None of the named Defendants undertook any personal action against Lowers in connection with this singular incident.

This finding, however, does not end this Court's inquiry. As noted by Defendants, a constitutionally protected right of privacy exists when a person has a subjective expectation of privacy that society is prepared to recognize as reasonable. See Katz v. United States, 389 U.S. 347, 360–61 (1968). Inmates, however, have a reduced right of privacy while incarcerated. See Hudson v. Palmer, 468 U.S. 517, 527–28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates. . .to ensure institutional security and internal order.") Security and safety concerns provide a compelling reason to monitor or record an inmate's telephone conversations. See United States v. Van Poyk, 77 F.3d 285, 291 (9th Cir. 1996).

Here, Lowers' subjective expectation of privacy was significantly reduced not only because of his status as a detainee, but because he chose to speak with his counselor after he was prompted to enter his PIN, and after both participants to the conversation had been warned by a tape recording that their conversation was being monitored and/or recorded. "…[D]efendants have no reasonable expectation of privacy in non-attorney telephone calls made from detention centers once a defendant has received notice of monitoring and recording of such calls." United States v. Lewis, 2011 WL 6826663, at *4 (W.D. Tenn. Dec. 1, 2011); United States v. Brown,

2008 WL 5377755, at *2–3 (D.N.J. Dec. 18, 2008) (citing United States v. Willoughby, 860 F.2d 15, 20–22 (2d Cir. 1998); United States v. Solomon, 2007 WL 2702792, at *1 (W.D.Pa. Sept. 13, 2007); United States v. Plummer, 2006 WL 2226010, at * 6 (W.D.Pa. Aug. 2, 2006)).  Lowers' status as a pre-trial detainee as opposed to a convicted prisoner does not change this conclusion, as the 'maintenance of prison security and preservation of institutional order and discipline are 'essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Willoughby, 860 F.2d at 21 (quoting Bell v. Wolfish, 441 U.S. 520, 546 (1979)).

Defendants note that in Maryland, an evidentiary privilege exists as to communications between clients and mental health specialists. Md. Code, Cts. & Jud. Proc., §9-109.1. The evidentiary privilege provides that:

> in any judicial, legislative, or administrative proceeding, a client or a client's authorized representative has a privilege to refuse to disclose, and to prevent a witness from disclosing, communications relating to (1) diagnosis or treatment of the client; or (2) Any information that by its nature would show a medical record of the diagnosis or treatment exists."

Nothing in the instant case appears to run afoul of this statute, as no one is seeking to disclose or compel the disclosure of the recorded communication.  At most, an act of negligence led to the recording of the conversation, and Lowers was aware that the conversation would be recorded prior to its recordation.  Negligence is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327 (1986).

There is no evidence of deliberate or purposeful invasion of privacy. Accordingly, Defendants shall be granted summary judgment by way of a separate Order which follows.

June 21, 2013                                   /s/
                                    George L. Russell, III
                                    United States District Judge